■ MONCURB, J.
I think there is no error in the decree of the Circuit court.
The will of Robert Gaw does not charge his real estate with the payment of his debts. Whether such a charge is created by a will, is always a question of- intention depending- upon the construction of the whole will. It is so natural to suppose that a man in that solemn act intended to be just, that courts have taken very slight words in a will to imply a charge upon lands. Carr, J., in Downman v. Rust, 6 Rand. 587. “Courts of equity (said Bord Byndhurst) have always been desirous of sustaining charges by implication for payment of debts, and the presumption in favor of them is not to be repelled by any thing short of clear and manifest evidence (from the will) of a contrary intention.” Price v. North, 1 Philips’ R. 85. It has therefore been established, as a general rule, that a direction by a testator that his debts shall be paid, charges them by implication on his real estate, either as against his heir at law or devisee. Ram on *Assets, ch. 4, 1 2, p. 57, 8 Law Libr. 39; Leading Cases, in Equity 71, Id. 247. To this general rule there are exceptions; one of which is, where the debts are directed to be paid by the executors. “If the testator directs a particular person to pay, he is presumed, in the absence of all other circumstances, to intend him to pay out of the funds with which he is intrusted, and not out of other funds over which he has no control. If the executor is pointed out as the person to pay, that excludes the presumption that other persons not named are to pay.” 2 Story’s Equ. Jur. ? 1247. When the executor is devisee of the real estate, a charge upon it will be generally implied by such a direction. But this will not be the case where the estate is specifically devised to a person who happens to be one of the executors. And even where the executors are also devisees, a mere general introductor}’ direction to the executors will not operate as a charge if it is manifest from the whole will that.it was not so intended. 2 Spence’s Eq. Jur. 321, 322, 71 Law Libr. 249, and cases cited.
There is no difficulty in the application of these principles to the case before us. The first clause of the will which creates the charge, if any, is in these words: “1st. It is my will and desire that all my just debts be paid out of my estate by my executors hereafter mentioned.” The words “out of my estate” are the only words in this clause which make it peculiar, or can afford any room for doubt. Strike out these words, and the clause is in a very common form, the construction and effect of which, standing by itself,- is well settled. It would charge only the estate in the hands of the executors. I have found no case in which the will contained these words. But I do not think they alter the sense of the clause. They do not mean the whole estate, but that portion of it which would come to the hands of the'executors as such; *the funds with which they were intrusted, and not other funds over which they had no control. This, I think, would be the true construction of the clause, standing by itself and unaffected by the context. But looking to the context for aid in its construction, there can be no doubt about it. By the 12th clause of the will the testator directs all his personal estate, except merchandise, to be sold by his executors -for the payment of his debts, and gives them full power to sell his .slaves, if necessary, for that purpose. This was the estate to which the testator doubtless referred in the first clause of his will; and it afforded, in his estimation, an ample fund for the payment of his debts. He had no idea that it would be necessary to sell any part of his real estate for that purpose. If by the first clause of his will he had merely directed his debts to be paid, without more, the implication of a charge upon his whole estate would not have been repelled by the 12th clause. But having directed them to be paid out of his estate by the executors, important light is shed upon the meaning of these words by that clause.
The first clause then is to be construed as if it had been a mere direction that the debts should be paid by the executors; and in order to ascertain out of what part of the estate it was intended they should be paid, it is only necessary to enquire what part of the estate would come to the hands of the executors as such. The whole personal estate would come to their hands; and that of course was charged by the will, as it was by the law. But none of the real estate would come to their hands or under their control; unless, perhaps, the house and lot devised to Catharine Smith for life, which was directed after her death to be sold, and the money arising from the sale to be equally' divided among the children of the testator- named in the will. It would *747 be the duty of the executors *to make that sale, no other person being' appointed by the will for the purpose. Whether the proceeds of that sale would be applicable to the payment of debts under the first clause of the will, is unnecessary to be determined in this case, as no question is raised in the subject. It does not appear what has been .done with that property; though the presumption is that the life tenant yet lives and has it in her hands. By consent of parties, the property devised to her for life was not charged with any portion of the debts, and the suit was dismissed as to her. It will be time enough after her death to determine the proper disposition to be made of that property, or the proceeds of the sale thereof. All the other real estate of the testator was given directly to the devisees, without any interposition of the executors, express or implied. A portion of it, it is true, is given to the appellant, who is one of the executors; but is given to him in his own right, and not as executor. And we have seen that where an estate is specifically devised to a person who happens to be one of the executors, it will not be charged with the debts of the testator by a mere direction to the executors to pay them. But certainly the devisee in such case ought to be the last person to complain that the land devised to him was not held to be so chargeable.
It having been ascertained by the commissioner’s report in the case, that, after exhausting the personal estate of the testator, there still remained due to his executor David Crawford, on account of debts of the estate paid by him, a balance of three thousand four hundred and thirty-five dollars and twenty-seven cents, including interest to the 3d of June 1846; and it having been ascertained, or conceded, that the said executor had paid more than that amount of specialty debts binding the heirs, he was entitled to stand in the place of the creditors whose debts he had paid, and to charge *the said balance upon the real estate of the testator; which was liable therefor in the hands of the dev-isees, in proportion to the value, at the death of the testator, of the estate devised to each of the devisees respectively. The widow was not chargeable with any thing on account of the said balance in respect to the devise to her; which was in lieu of, and of less value than, her dower. The incum-brance of her life estate was properly taken into consideration in estimating the value of the real estate; and the value of the said life estate was properly ascertained, and deducted from the value of that part of the estate of the testator to which it was attached. Indeed, there was no exception to the report of the commissioner, and no complaint of the decree of the Circuit court in this respect.
I think that the legacies of one thousand dollars each to Mary Huffman and Rebecca H. Gaw, charged upon the two-thirds of the Brubaker farm devised to Elizabeth Crawford and John Gaw, were subject to be abated on account of the balance due to the executor Crawford, and chargeable on the real estate of the testator; and that the portion of that balance for which the said two-thirds were liable, was apportionable between the proprietors of the said legacies and of the said two-thirds, the rate of apportionment being the proportion which the value of said legacies at the death of the testator, bore to the residue of the value of said two-thirds at that period, after deducting therefrom the said value of the legacies. There was at least as much reason in laying the charge upon the said legacies as upon the residue of the said two-thirds of the Brubaker farm. The lagacies constituted a part of the subject of the said two-thirds, and were carved out of it. They were certainly not more specific in their nature than was the residue of the subject, and not more entitled to exemption from liability for the debts of the testator.
*1 think the mode, adopted by the commissioner, of ascertaining the value of the said legacies at the death of the testator (by ascertaining what amount improved at compound, instead of simple interest, from that time until the death of the widow, when the legacies were payable, would be equal to the amount of the legacies), was correct. That mode, in its application to such cases, received the sanction of the judges of this court in Wilson v. Davisson, 2 Rob. R. 384.
But I do not see how the mode of ascertaining the value of the legacies at the death of the testator can affect the appellant; as its only object is to ascertain the rate of apportionment between the two legacies of one thousand dollars each, and the residue of the subject on which they are chargeable. The portion of the balance due to the executor Crawford, for which that subject is liable, cannot be increased or diminished by the mode of its apportionment among the different interests in the subject. The only persons affected are the proprietors of those interests; and they do not complain.
I think the advancements made by the testator in his lifetime to his children were properly not taken into consideration in the apportionment of the balance due to the executor Crawford; and that the said balance was chargeable only on the real estate left by the testator at his death. The only ground for contending that the advancements ought to be considered in the said apportionment is, that they are directed in the will to be accounted for with the executors in the settlement and division of the estate; from which it is inferred that the testator intended to make all his children equal in the distribution of his estate. It is obvious that this direction does not refer to the specific devises of property made to his children respectively, but only to the residue of his estate undisposed of, which, by the 14th clause of his will, he directs to *be equally divided among his ■ children; and perhaps also to the money arising from the sale of the house *748 and lot devised to Catharine Smith for life, which, by the 13th clause of his will, he also directs to be equally divided among his children. The executors would have to make the former, and perhaps the latter, of these two divisions; and in making them, he wished the advancements referred to in his will to be accounted for with them. But they would have nothing to do with the real estate specifically devised to some of his children, nor with the sums of money charged on a part of it in favor of his daughters Mary Huffman and Rebecca H. Gaw; and therefore the direction to account for the said advancements with the executors, in the settlement and division of the estate, cannot apply to the said real estate and sums of money, which would not come to the hands of the executor, and as to which no settlement or division would be made. The property advanced by the testator to his children in his lifetime was not a part of his estate at his death; and there is nothing in the will to affect the legal liability of the devisees, which is in proportion to the value of the property devised to them respectively.
In the assignments made by Mary Huffman and Rebecca H. Gaw respectively to David Crawford, they acknowledge themselves indebted to him, each in one-fifth of the balance due to him on Ms executorial account; and agree that their legacies shall be liable for the payment of the same respectively. Rebecca H. Gaw’s due proportion of the said balance was in fact about one-fifth; but Mary Huffman’s was much less than a fifth. I think the Circuit court properly regarded these parties as liable only for their due proportions of the balance, notwithstanding the assignments; and properly decreed the assignments to stand as security only for what they respectively owed to David Crawford’s estate. The purpose both of the assignors and ^'assignee was to secure only what was really due. They were mutually mistaken as to the proportion in which the devisees were bound to contribute to the payment of the debt, supposing them to be bound equally, instead of in proportion to the value of the estate devised to -them respectively, and the assignments were executed under that mistake. They cannot be regarded as voluntary obligations, nor as admissions or compromises of asserted or disputed claims. They were without consideration, and therefore void, as to the excess of one-fifth of the said balance, over what was really due by the assignors respectively. See 1 Story’s Equ. Jur. ? 120-137, and notes; 2 Evans’ Pothier, Appendix, No. xviii.
There are other considerations which render the assignments, and especially that of Mary Huffman (as to which only the question seems to be material), void to that extent. The parties were dealing with expectancies; with future, and not with present interests. Eegatees, whose legacies were payable on a future and perhaps' remote contingency, were dealing, in regard to them, with the person upon whom their payment would devolve. They were indebted to him, and to some extent must have been under his influence. One of them, at least, Mary Huffman, was in very indigent circumstances. In this state of things, the utmost extent to which the assignments should be permitted to operate, is to stand as security for what is justly due from the assignors to the assignee. 1 Story’s Equ. Jur. $ 337, 338, 344.
An objection is taken, in the petition of appeal, to the account, as stated by the commissioner, between the coexecutors David Crawford and Jacob R. Gaw. No exception was taken to that account in the court below; and the objection,in the appellate court, therefore, comes too late. But I think it is not well founded. It appears to rest only on the ground that David Crawford, *who was the acting executor, in a former settlement with his coexecutor gave him credit for five hundred and three dollars and thirt3r-one cents, one-half of the commission allowed by the County court commissioner, who settled the executorial account. The commissioner of the Circuit court having disallowed the commission of the executors in their settlement of the executorial account, properly disallowed the credit for one-half of the commissions in the resettlement of the account between the executors. It would have been to the last degree unjust that David Crawford should not only render all the services for nothing, but be compelled, out of his own pocket, to pay one-half of the usual commission to his coexecutor, who rendered no service at all.
I am for affirming the decree.
The other judges concurred in the opinion of Moncure, J.
Decree affirmed.